UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CV-2378(JMR/FLN)

Heritage Development of Minnesota, Inc. )
)
v. ) ORDER
)
Donna Carlson et al. )

This matter is before the Court on defendants' motion for summary judgment. Plaintiff, Heritage Development of Minnesota, Inc., brought suit against defendants Donna Carlson, Caroline Dahl, Jeffrey Reinert, and Jeffrey O'Donnel, individually and in their official capacities as City Council members for the City of Lino Lakes, Minnesota,[1] claiming a violation of its due process rights, and alleging a cause of action pursuant to 42 U.S.C. § 1983. This case was initially filed in Minnesota state court, and was properly removed to this Court pursuant to 28 U.S.C. § 1441(b). Because the complaint sets forth a federal question, jurisdiction is proper here.

Plaintiff claims its rights were violated when defendants denied approval of a preliminary plat application for a real estate development. Defendants claim plaintiff cannot maintain a § 1983 claim because it fails to demonstrate the existence of a protected property interest. Defendants also claim plaintiff is

[1]The City of Lino Lakes is not a named defendant.

FILED MAY 28 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED MAY 28 2003
DEPUTY CLERK'S INITIALS

unable to establish a triable question as to whether their actions were truly irrational. Finally, defendants seek qualified immunity as members of the Lino Lakes City Council. In opposing defendants' motion, plaintiff contends it had a protected property interest to which the Fourteenth Amendment's Due Process Clause attached, and that defendants' denial of its preliminary plat application was "truly irrational."

The Court, having reviewed the record and the arguments of counsel, finds as a matter of law that plaintiff did not have a protected property interest in its proposed development plat, and therefore cannot maintain a § 1983 claim. The Court further finds that, even if plaintiff had a protected property interest, it has failed to demonstrate a triable question as to whether defendants' conduct as municipal officers was "truly irrational." Because plaintiff's claim fails, the Court need not reach the issue of qualified immunity. Accordingly, defendants' motion for summary judgment is granted.

I. Background

Plaintiff applied to the Lino Lakes City Council for preliminary plat approval to develop a parcel of land referred to as the "Saddle Club." Plaintiff planned to develop the property originally acquired by its predecessor in interest, Render Development, Inc. In order to do so, plaintiff signed a purchase

agreement for the approximate 40 acre site. The property plaintiff acquired is divided almost right down the middle; the northern half has public sewer access, the southern half does not.

Plaintiff initially sought preliminary plat approval for the entire site, which would have required rezoning part of the property, amending the Comprehensive Plan, and moving the dividing lines to provide for public sewer access for the entire property. The initial application was denied in July, 2001, and is not before this Court.

On August 13, 2001, plaintiff submitted an application for approval of a new preliminary plat for the northern half of the property calling for approximately 28 single family residential lots. Access to the proposed development was to be provided by Old Birch Street from the east, and Killdeer Drive from the west. Both roads connect to Birch Street, a two-lane undivided roadway with a 50 mile per hour speed limit. Old Birch Street forms two "T" intersections with Birch Street ("the Birch intersections"), and was to provide street access for approximately 10 of the lots. See, Crema Affidavit, Ex. 4.

The City Planning and Zoning Board did not approve the revised preliminary plat, voting 2-2 with one abstention. Plaintiff then took its proposal to the Lino Lakes City Council.

On October 8, 2001, plaintiff's attorney appeared at the public hearing before the City Council and spoke on behalf of the revised preliminary plat application.

The City Council denied plaintiff's application, stating its decision was based on the application's failure to comply with the City's ordinances and Comprehensive Plan. In its decision, the City Council relied in part on the opinion of plaintiff's traffic engineer, as well as the Lino Lakes' City engineer.

Plaintiff's traffic engineer made two separate determinations. First, he estimated the proposed development would generate approximately 268 total automobile trips per day. Using this estimate, he concluded that, despite the increased traffic flow, the roadways "[would] operate at acceptable levels of service." Crema Aff., Ex. 4. Second, and more importantly, he measured intersection sight distances for vehicles turning onto Birch Street and concluded that three of the four Birch intersections had inadequate sight distances.[2] An intersection sight distance, as the name implies, measures the sight line of a driver merging onto a roadway. Plaintiff's traffic engineer

[2]The sight distance looking to the right (east) at the west Birch/Old Birch intersection was 640 feet. At the east Birch/Old Birch intersection looking to the left (west), the sight distance was 575 feet, and looking to the right (east) the sight distance was 790 feet. The traffic engineer compared these distances to the Mn/DOT Road design's recommendation of a sight distance of 1,010 feet to both the left and right for access to a 50 mile per hour roadway. Crema Aff. Ex. 4.

noted that adequate intersection sight distances ensure that "vehicles entering the roadway [have] enough time to safely integrate with through traffic." Id.

The City Council also relied on its own engineer's opinion that the increased traffic to the Birch Street and Old Birch Street intersections "would be a safety concern," and the "design [of the proposed preliminary plat] does not promote the flow of traffic." Smith Affidavit Ex. 21.

Based upon the evidence before it, the City Council denied the preliminary plat, finding the proposed development would foster additional congestion at dangerous intersections; dangerous access roads; unnecessary loss of existing features; problems concerning sewer access from the western portion of the lot instead of the north, caused by two contiguous non-harmonious neighborhoods; problems in managing growth to avoid premature City expenditure; and a failure by plaintiff to propose financing for necessary infrastructure improvements. See, Def's. Mem. In Supp. Of Summ. J. Mot., pp. 4 (citing October 8, 2001, City of Lino Lakes City Council Meeting transcript pp. 32-37); see also, Pl's. Mem. In Opp. To Def's Mot. For Summ. J., pp. 10.

The City Council's denial referred to the City's Zoning

Ordinances and Comprehensive Plan,[3] including a reference to Section 1, Subdivision 1, of the City's Zoning Ordinance. This Ordinance states in relevant part:

> A. Intent and Purpose. This Ordinance is adopted for the purpose of:
>
> 1. Protecting the public health, safety, comfort, convenience and general welfare.
>
> ...
>
> 5. Limiting congestion in the public right of way.
>
> ...
>
> 9. Conserving and developing natural resources.

Smith Affidavit, Ex. 21.

The City Council also referenced Section 2, Subdivision 5, of the City Zoning Ordinance, which states in relevant part:

> D. Design Standards. Plans which fail to meet the following standards shall not be approved.
>
> 1. The site and buildings shall be designed, constructed and maintained to avoid substantial probabilities of:
>
> ...
>
> d. Traffic pattern incompatibility.
>
> ...
>
> f. Unnecessary loss of existing natural features (vegetation, steep slopes, wetlands, water bodies).
>
> ...
>
> 5. The proposed use shall be sighted, designed, oriented and landscaped to produce a harmonious relationship of building and grounds surrounding buildings and properties and the total neighborhood environment.
>
> 6. The proposed use shall show sufficient landscaping to screen undesirable features and to enhance the

[3]This Opinion cites only those provisions the Court considers relevant to the resolution of this dispute. The City Council meeting record references other provisions not cited herein.

appearance of development.

Smith Affidavit, Ex. 21.

Plaintiff claims the City's decision was an illegal application of state law in contravention of 42 U.S.C. § 1983.

II. Discussion

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Liberty Lobby, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F. 2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, 477 U.S. at 247-48. If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

A cause of action is allowed for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any person acting "under color of any . . . ordinance, regulation . . . custom or usage, of any State or Territory." 42 U.S.C. § 1983 (2000). To assert a successful § 1983 claim, two elements must be present -- the conduct complained of must be committed by someone under color of law, and such conduct must deprive the plaintiff of its constitutional rights. Dubose v. Kelly, 187 F.3d 999, 1002 (8th Cir. 1999).

The parties agree the City's denial of plaintiff's preliminary application was made under color of state law, thus satisfying the first factor. Defendants, however, claim plaintiff cannot establish a deprivation of its due process rights under the Fourteenth Amendment of the United States Constitution. U.S. Const. amend. XIV. The due process clause affords two forms of protection -- procedural and substantive. Plaintiff does not claim it was deprived of procedural due process; it claims deprivation of its substantive due process

rights.[4] See, Pl's. Memo In Opp'n. To Def's. Mot. For Summ. J. p. 15.

A. Substantive Due Process

To prevail on its claim of deprivation of substantive due process, plaintiff must first establish a "protected property interest to which the Fourteenth Amendment's due process protection applies." Bituminous Materials, Inc. v. Rice County, Minnesota, 126 F.3d 1068, 1070 (8th Cir. 1997). The existence of a protected property interest is a question of state law, and must amount to "'a legitimate claim to entitlement' . . . as opposed to a mere subjective expectancy." Id. (quoting Batra v. Board of Regents, 79 F.3d 717, 720 (8th Cir. 1996)). Such a claim to entitlement arises only when the government's discretion is substantially limited by a statute or regulation. Id. This is a restrictive standard, limited to situations where:

> State laws and regulations (1) 'place substantive limitations on the exercise of official discretion'; and (2)contain 'explicit mandatory language' comprising specific directives to the decision maker that if the regulations substantive predicate actions are met, a particular outcome must follow.

Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1993).

---

[4]Although plaintiff's complaint fails to identify which due process guarantee it was deprived, the Court has no doubt plaintiff is relying solely on the substantive component of the due process clause. The Court is confident in this belief in light of the written submissions and the arguments before it. See, Pl's. Mem. In Opp'n. To Def's. Mot. For Summ. J. p. 15 ("In order to maintain a substantive due process claim, Plaintiff must establish . . .15")

Even if plaintiff can demonstrate the existence of a protected property interest, it must also prove a second element -- "truly irrational" conduct on the decisionmaker's part. Bituminous Materials, Inc., 126 F.3d at 1070. This heightened standard requires a plaintiff in the zoning or land-use dispute context to "allege something more than that the government decision was arbitrary, capricious, or in violation of state law." 846 F.2d 469, 470-71 (8th Cir. 1987) (en banc) (Arnold, Richard S., J., concurring); see also, Bituminous Materials, Inc., 126 F.3d at 1070 (illustrating, as an example of truly irrational conduct, a zoning board granting approvals only to persons whose names begin with a letter in the first half of the alphabet).

Plaintiff claims it met the constitutionally-protected property interest standard by complying with Lino Lakes' zoning ordinances and by submitting its preliminary plat for approval to the City Council. In essence, plaintiff claims the broad discretion a zoning board normally enjoys is virtually non-existent when a preliminary plat submitted for approval facially complies with the zoning ordinances.

Minnesota courts have found that, "when a subdivision ordinance specifies standards to which a preliminary plat must conform, it is arbitrary as a matter of law to deny approval of a

plat which complies in all respects with the subdivision ordinance." Nat'l. Capital Corp. v. Village of Inver Grove Heights, 222 N.W.2d 550, 552 (Minn. 1974); see also, BECA of Alexandria v. County of Douglas, 607 N.W.2d 459, 463 (Minn. Ct. App. 2000). At base, plaintiff asks the Court to interpret this case law to say that once a zoning applicant meets the requirements of a zoning ordinance, that fact establishes a constitutionally-protected property interest. The Court declines this invitation because the case law is not so broad. The Lino Lakes zoning code is not a cookbook where one need only assemble the ingredients and bake. Lino Lakes has neither given developers a checklist, nor has plaintiff checked off each item. Moreover, even if the Court accepted plaintiff's interpretation of BECA of Alexandria, its claim would fail because the preliminary application did not perfectly fit the City's zoning plan, at least insofar as its attempt to meet traffic impacts.

The City Council issued extensive findings of fact contemporaneous with its decision and cited the six reasons for denial noted above. Notwithstanding the City's cited reasons,

plaintiff claims these reasons lack factual support.[5] Plaintiff particularly challenges the City's findings concerning the traffic impact of the proposed development. According to plaintiff, defendants' use of traffic safety as a reason for denial of preliminary approval cannot be supported in the absence of a Lino Lakes traffic regulating ordinance.

This argument, too, fails. The testimony of plaintiff's expert and its counsel's admissions at oral argument are fatal to the claim. Plaintiff's own traffic engineer recognized that intersection sight lines for vehicles turning onto Birch Street were inadequate.[6] Id. He found that three of the four intersection sight distances fell below Mn/DOT standards. Id. Plaintiff's attorney acknowledged the same at oral argument.

Plaintiff claims it is saved by another aspect of the traffic engineer's findings. It references the engineer's

---

[5]While plaintiff challenges certain other findings made by the City Council, its focus is clearly on the traffic regulation findings. See, Pl's. Mem. in Opp'n. to Def's. Mot. for Summ. J. p. 17 ("What this issue boils down to is traffic and there is no ordinance in place to regulate traffic according to the Mayor. . . ."). The Court need not consider these collateral challenges, however, because if the city can show its proffered findings are not "truly irrational," it withstands plaintiff's substantive due process challenge. Bituminous Materials, Inc., 126 F.3d at 1070.

[6]The Traffic Study Report concluded, "adequate sight distance is currently provided only at the west intersection looking to the left. The intersection sight distance at the remaining locations is less than that recommended in the Mn/DOT Road Design Manual." Traffic Study Report, Pl's. Ex. 4.

finding that, despite the possible introduction of more vehicles onto the Birch Street roadway, the roads "will operate at acceptable levels of service." Crema Affidavit, Ex. 4. Even assuming this to be true, it does not cure the problem of inadequate sight distances at the Birch intersections. The engineer's statement that a road "will operate at an acceptable level" is not the same as saying that a driver trying to get onto that 50 mile per hour road will be able to see a safe distance.

The City Council also considered the opinion of its own engineer who concluded that added intersection traffic would not only be a "safety concern," but would also fail to "promote the flow of traffic." Smith Aff. Ex. 1. In view of these statements, the denial of the preliminary plat based on "additional congestion at dangerous intersections" and "dangerous access roads" appears entirely consistent with the evidence before them.

Plaintiff further claims the City's lack of a traffic regulating ordinance has caused a substantive due process deprivation. According to plaintiff, absent this ordinance, the City's stated traffic concerns are a mere pretext for its denial of zoning for the proposed development. Plaintiff suggests this is "truly irrational" conduct on the City's part.

This argument is flawed. Plaintiff persists in its claim in

the face of Lino Lakes' City Zoning Ordinance, Section 2, Subdivision 5, which authorizes the regulation of land use in order to "avoid substantial possibilities of: . . . Traffic pattern incompatibility."[7] Smith Affidavit, Ex. 21. Plaintiff's argument fails to consider other City ordinances which allow for consideration of public health, safety, and welfare. <u>See</u>, Sect. 1, Subd. 1, City of Lino Lakes Zoning Ordinance; Smith Aff. Ex. 21.

The Court finds as a matter of law that the City Council's decision denying zoning approval for a development which would increase the flow of traffic at an already dangerous intersection -- where the proponent's own expert admits sight lines are inadequate to assure safe entry onto the roadway -- falls well within the scope of the City's power to regulate the health, safety, and welfare of its citizens. It is important to note that, even if the City Council's denial was premised on an incorrect interpretation or application of law, such a mistake does not rise to the level of a constitutional claim. <u>See</u>, <u>Rozman v. City of Columbia Heights</u>, 268 F.3d 588, 593 (8th Cir. 2001) (en banc) (a misinterpretation or misapplication of a city

[7]Plaintiff argues that although there may be increases in traffic and sight distance safety concerns, there is no allegation of "incompatibility with traffic." Pl's. Memo. In Opp. To Def's Mot. For Summ. J., pp. 20. Such a narrow reading of the ordinance is not only without support, but also disingenuous.

code does not give rise to a federal substantive due process claim).

The courts have reserved "'the theory of substantive due process . . . for truly egregious and extraordinary cases. . . .'" Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992). The Chesterfield court emphasized that its "decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith." Id. Chesterfield's restrictive view stems from the court's appropriate reluctance to intervene in zoning and land-use disputes. Such decisions are inherently susceptible to "simple rote allegations that the . . . decision is arbitrary and capricious." Lemke v. Cass County, Nebraska, 846 F.2d 469 (8th Cir. 1987) (en banc) (Richard S. Arnold, J. concurring). Accordingly, courts have recognized that these claims "are better addressed to state courts and administrative bodies." Chesterfield, 963 F.2d at 1105. It is clear that zoning issues should not turn "every violation of state law . . . into a federal constitutional tort." Id.

The Court, therefore, finds plaintiff has failed to present a triable question of whether defendants' rejection of the proposed preliminary plat was "truly irrational." Having failed to do so, plaintiff's claim fails as a matter of law. Bituminous

Materials, Inc. v. Rice County, Minnesota, 126 F.3d 1068, 1070 (8th Cir. 1997).

B. Qualified Immunity

Absent a constitutionally cognizable right, the Court need not reach the issue of qualified immunity. "In Siegert v. Gilley, 500 U.S. 22 (1991), the Supreme Court clarified the proper analysis for determining when a public official is entitled to qualified immunity." Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). Under Siegert, a party must first establish a violation of its constitutional rights before even reaching the issue of qualified immunity. Id. (citing Siegert v. Gilley, 500 U.S. 22 (1991)). Here, plaintiff has failed to demonstrate a constitutional violation; the question of defendants' entitlement to qualified immunity is therefore moot.

III. Conclusion

Based on the foregoing, the Court finds plaintiff has failed to establish a cognizable claim under 42 U.S.C. § 1983. Accordingly, defendants' motion for summary judgment [Docket No. 17] is granted.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 27th, 2003

JAMES M. ROSENBAUM, Chief
United States District Court

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd